IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: Greens 126 LP | § | |
| | § | BANKRUPTCY NUMBER |
| DEBTOR, | § | 08-36470 |
| | § | |
| and   Oaks 198 LP | § | |
| | § | BANKRUPTCY NUMBER |
| DEBTOR. | § | 08-36471 |
| | § | |
| and   Trails 240 LP | § | |
| | § | BANKRUPTCY NUMBER |
| DEBTOR. | § | 08-36472 |

**Exhibit C**
**Cash Management and Reporting Procedures**

Debtors## and Respondent agree to the following cash management and reporting procedures:

1. Debtors have prepared the attached budget ("Budget") attached to the Agreed Order as Exhibit A, based on Debtors' best business judgment and experience.  Respondent has reviewed Budget and consents to Budget for the cash collateral agreement period.  Although Debtors' Budget period extends beyond the period of the cash collateral agreement, Debtors and Respondent agree that the following provisions apply only during the cash collateral period agreement and do not extend further unless mutually agreed to by both parties.

2. Respondent agrees that Debtors are allowed to pay amounts listed in Budget on a monthly basis without further review or approval by Respondent, subject to the conditions provided for in the Interim Order Granting Expedited Motion of Debtors for Agreed Use of Cash Collateral (the "Order") and in the Budget attached thereto as Exhibit A.

3. Respondent and Debtors both recognize and agree that it is in their mutual interest to work together to maximize occupancy of the properties.  In order to maximize occupancy, certain standards must be maintained, including property condition, general appearance, code compliance, safety, security and utilities.

4. Respondent and Debtors both recognize and agree that it is in their mutual interest to

work together to maintain compliance with municipal codes as well as requirements of other regulating entities. Respondent and Debtors further recognize and agree that certain costs, such as utilities, are dependent on a number of variables, such as weather, fuel price changes, and to a lesser extent the number of units leased (i.e., water) for which any working and realistic forecasting formula is beyond the scope required for the cash collateral period. Additionally, some costs, such as electricity and landscaping, exist independent of the number of units leased. Furthermore, Respondent and Debtors both agree that cost control resulting in increased cash flow is in both their mutual interests, and critical to preparing and completing a successful plan of reorganization.

5. Debtors recognize the interests held by Respondent and recognize Respondent's desire to maintain some oversight of expenditures during the cash collateral agreement period. To that extent, Debtors and Respondent agree that all costs can vary, but to the extent that a cost exceeds amounts allowed by the reviewed Budget, Respondent has the right to review and approve those variances. In addition, overall expense variances in the Budget greater than 5% for any given month must be approved by the Respondent prior to payment of expenses. Furthermore, the "Variable Expense" categories as designated in the Budget are expected to move in conjunction with total Revenues. Respondent has a right to approve variable expenses, regardless of the variable amount indicated in the Budget, if the variable expenses do not decrease by less than 15% for a corresponding decrease in total revenues (Note 1). Respondent recognizes that Debtors operate an ongoing business of which service to the tenants is key to maintaining and increasing occupancy. To that extent, Debtors and Respondent agree to comply with the "Monthly Variance Amounts" listed in Budget for Respondent review of monthly expenditures prior to Debtors committing to and/or making those expenditures that exceed the Budget amount plus Monthly Variance Amount prior to Debtors committing to and/or making those expenditures. Respondent recognizes and agrees to review Debtors' request(s) within the timetables provided in the "Notes" attached to Budget in the Monthly Variance. Unless good reason is timely provided to Debtors by Respondent for not complying with the timetables for response as provided for in Exhibit A, there is a presumption that Debtors are authorized to proceed with the expenditure at the end of the notification period. Finally, Debtors and Respondent both agree that in situations where the health and safety of the tenants are involved, Debtors may have to make unforecasted expenditures or expenditures that exceed the Budget plus Variance Amount to avoid loss of life, legal liability, or issues with occupancy or other required permits. These extraordinary circumstances may require Debtors to timely notify Respondent but not necessarily before making the expenditure. This Cash Management and Reporting Procedures Exhibit cannot address all unforecastable issues that may develop.

6. Debtors and Respondent agree that a separate process will be established to budget and schedule the repairs to the properties for which insurance coverage exists, and that these cash management rules will not apply to the insurance covered repairs.

7. Reports shall be submitted to Respondent on a monthly basis in the form shown in attached Exhibit B. Respondent shall also receive copies of the Debtors' monthly operating reports as filed with the United States Bankruptcy Court. Reports shall begin

with the first full calendar month following the entry of this Agreed Cash Collateral Order and shall be due on the 15th of the month following the period covered by the report. Reports may be delivered by email to the party designated by Respondent following the granting of the Order.

8. Debtors are authorized to use cash collateral for payment of professional fees approved by this Court up to a maximum amount of $60,000.00, upon notice to Respondent and opportunity to be heard on any such fee application to the court and pursuant to the conditions provided for in the Order.

9. Debtors and Respondent agree that Tenant's Post-Petition Security Deposits received by Debtors following the filing date of the bankruptcies shall be deposited in one separate DIP account and refunds of Tenant Security Deposits to tenants shall not be subject to the approval procedures set out in these Cash Management and Reporting Procedures.

Note 1:  In example, if total revenues fall by $100, a $15 decrease in variable expenses is expected.  If variable expenses do not decrease by $15, Respondent has a right to approve all variable expenses regardless of the allowed variable amount referenced in Budget.