IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| Greens 126, L.P. | § | No. 08-36470 |
| Oaks 198, L.P. | § | No. 08-36471 |
| Trails 240, L.P. | § | No. 08-36472 |
| | § | Chapter 11 |
| | § § | |
| DEBTOR(S) | § | Contested Matter |
| | | |
| Greens 126, L.P. | § § | |
| Oaks 198, L.P. | § | |
| Trails 240, L.P. | § | |
| | § | |
| Movants | § | |
| | § | |
| vs. | § § | |
| Legg Mason Real Estate Capital II, Inc | § § | |
| | § | |
| RESPONDENT | § | |

United States
Southern District of Texas
FILED ENTERED
11/10/2008
NOV 1 0 2008

Michael N. Milby, Clerk

### INTERIM ORDER GRANTING EXPEDITED MOTION OF DEBTOR FOR AGREED USE OF CASH COLLATERAL

CAME TO BE CONSIDERED BY THIS COURT, IN THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, on the date of the granting below, for consideration of the Debtors' Expedited Motion For Entry of Agreed Interim Order For Use of Cash Collateral And Related Relief, and it appearing that the immediate entry of this Order is essential to the continued orderly operation of Debtors' Businesses and is in the best interest of Debtors and the Debtors' Estate, the Court has determined to grant the Motion having made the following findings of fact:

1. Debtors each filed separate voluntary petitions under Chapter 11 of the

Bankruptcy Code on October 6, 2008.

2. On motion of the Debtors, the Court issued an order for joint administration of the three cases under Case no. 08-36470 on October 8, 2008.

3. Debtors have provided notice of the filing of the Motion to the Respondent and to all parties who have filed requests for notice, as evidenced by the Certificate of Service previously filed by the Debtors' counsel with this Court, which notice this Court finds to be appropriate and adequate under Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, as well as the related Bankruptcy Local Rules, to satisfy the "Notice and Hearing Standards" set forth in 11 U.S.C. § 102(1) of the Bankruptcy Code and as required by § 364 of the Bankruptcy Code.

4. If the Debtors' are in default under the terms of this Order, Respondent may file a motion with this Court seeking any additional protection as it may reasonably require with respect to the continued use of cash collateral by such Debtors or otherwise including without limitation, modification or termination of this Order. Nothing contained herein shall be deemed to constitute an admission by Respondent that its interests in its Pre-petition and Post-petition Collateral (as defined below) are adequately protected within the meaning of Section 361 of the Bankruptcy Code. Respondent shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law, including their right to seek additional adequate protection.

5. Prior to the filing of the Chapter 11 Petitions, Respondent was the secured creditor as provided in the Deed of Trust, Security Agreement and Financing

Statement ("Agreement"), dated January 25, 2007. Respondent has a perfected security interest in the real and personal property as provided in Agreement including all Rents (as defined in the Agreement and the Assignment of Leases and Rents dated January 25, 2007 (the "Assignment of Rents") (the "Pre-petition Collateral").

6.  Debtors believe the value of the Pre-Petition collateral exceeds the amount of the pre-petition indebtedness secured by the Agreement, pursuant to 11 U.S.C. Section 506(b), and if otherwise, is the same effective collateral as provided in the Agreement so that the granting of a security interest to Respondent in Debtor's specific real and personal property as provided for in Agreement, whether existing or created prior to or after the filing of the Debtors' bankruptcy petitions, to secure the indebtedness to Respondent will not prejudice the rights of any creditor or other claimants of the Debtors; nevertheless, the Court at this time is not making any specific finding regarding the value of the collateral.

7.  An immediate need exists for Debtors to use cash collateral in order to continue the operation of their businesses. Without such, Debtors will likely not be able to reorganize.

8.  Good cause exists for the immediate entry of this Order on an interim basis to be effective as of the date of granting of this Order, to continue no longer than 110 days after the date the Orders for Relief were entered (October 6, 2008), and as such will minimize disruption of the Debtors' businesses as a "going concern," will increase the possibilities for a successful reorganization, and is in the best interest of Debtors, their creditors, their tenants, and their bankruptcy estates.

9.  The terms upon which the Debtors are authorized to use cash collateral are approved on an interim basis under the following conditions:

NOW, upon the application of Debtors for the use of cash collateral, and sufficient cause being shown, IT IS ORDERED AS FOLLOWS:

    A.  The Motion is GRANTED and Debtors are authorized to use cash collateral for the line item expenditure descriptions and the amounts indicated on the "Budget" to be attached hereto as Exhibit "A" and made a part hereof for all purposes, effective as of the date of this Order, consistent with and subject to variations and needs of Debtors' businesses, as limited by subsequent sections of this Order. Exhibit "C" "Cash Management and Reporting Procedures" attached to this Order is to be read in conjunction with Exhibit "A" for the purposes of this Order.

        (1)  Where indicated on Exhibit "A", Debtors are authorized to exceed the budgeted amount up to and including the variance amount without authorization from Respondent.

        (2)  Where amounts above the variance amount as indicated on Exhibit A are required by Debtors, Debtors shall obtain approval from Respondent prior to making the expenditures and Respondent shall provide an answer allowing or disallowing the expenditures within the time lines as provided on Exhibit "A". Respondent shall designate in writing to Debtors' Project Manager, the individual who shall provide the answers required by this subsection, along with such individual's address, email address, and phone number.

        Respondent shall assume the responsibility of designating at all times, the individual responsible for providing the answers within the required timeframes at no prejudice to Debtors.

(3) Overall expense variance in the Budget greater than 5.0% for any given month must be approved by the Respondent prior to payment of expenses. Otherwise, Debtor is authorized to expend amounts up to the Budget amount plus 5.0% without seeking prior authorization from Respondent.

(4) "Variable Expense" categories (as designated in the Budget) are expected to move in conjunction with total Revenues. Respondent has a right to approve variable expenses, regardless of the variable amount indicated in the Budget, if the variable expenses do not decrease by less than 15% for a corresponding decrease in total revenues[##].

(5) Debtors shall pay all outgoing expenses from the Greens 126 DIP account with contributions from the Trails 240 DIP and Oaks 198 DIP accounts. The amount of the contribution to the Greens 126 DIP account from the other individual Debtors shall be determined by Debtors' management based on their experience and knowledge. Exhibit "B" is an approximate representation of the envisioned cash flow scheme among Debtors for expense payments.

(6) Debtors are required to provide monthly reports in compliance with

       the Budget as described in greater detail in the Cash Management and Reporting Procedures attached hereto as Exhibit C and in the form shown in Exhibit B attached hereto.

    (7)    Rents and other cash transactions related to the ongoing operation of each individual Debtor's apartment business shall continue to be deposited to that individual Debtor's DIP account.

    (8)    Tenant post-petition security deposits shall be deposited in a separate DIP account to be set up by Debtors. The account may be one for all three Debtors, or separate accounts for each Debtor, based on Debtors' management business discretion.

B.    Any cash collateral not used to maintain the property, as authorized by the Budget attached hereto as Exhibit A, must be paid by Debtors, first to Respondent to replenish the deficiencies in the tax and insurance escrow account(s) maintained by Respondent in order for taxes and insurance premiums to be timely paid. Once such tax and insurance escrow amounts have been replenished, Debtors may fund a working capital reserve required, *inter alia*, for the accumulation of funds to properly present a plan for confirmation, of an amount to be determined by mutual agreement between Debtors and Respondent. Upon maximizing such working capital reserve, all cash collateral not used to maintain the property as authorized by the Budget will be applied against accrued and unpaid interest.

C.    Debtors are authorized to use cash collateral for various inspections

    ("Inspection Budget") in order to remain in compliance with appropriate codes and inspection reports. Debtors estimate the total amount of funds needed for such inspection-related repairs to be $30,000.00. Debtor is authorized by this Order to spend up to $5,000.00 for the initial work with Debtors to provide Respondent with actual receipts and/or invoices on such expenditures shortly thereafter and prior to any additional requests for expenditures on inspection-related repairs. Debtors may request authorization for expenditure of additional amounts in increments of $5,000.00 from Respondent. Respondent commits to provide a response for the additional amounts within five (5) days from receipt of request. Respondent further commits that in areas where an issue of health, safety and welfare exists, Respondent will provide a response within the shortest possible but commercially reasonable time to Debtors' request. Where an issue of health, safety and welfare exists, Respondent recognizes that Debtors may have to make decisions of a reasonable and prudent man in Debtors' position would make, however, such expenses should at no time exceed $2,500 without prior approval from Respondent.

D. Debtors are authorized to use cash collateral from insurance proceeds, other than those related to business interruption, to repair existing structures damaged by fire and by Hurricane Ike. Structures are to be repaired to pre-damaged condition unless otherwise agreed by Debtors and Respondent. Insurance proceeds, other than those related to business interruption, are to be held by Respondent in trust for Debtors

and applied only to repair of existing structures, and are not to be applied by Respondent to any other fees, costs, arrearages or the like. The method of cash disbursement for the repair of existing structures is to be by commercially reasonable and generally accepted industry procedures, to be developed jointly by Debtors and Respondent.

E.  Any use of cash collateral by Debtors for expenditures related to acquiring replacement financing for the loan currently held by Respondent will be authorized, if at all, and amount determined, if any, through a mutually agreed and commercially reasonable procedure to be developed by Debtors and Respondent.

F.  Debtors are authorized to use cash collateral from business interruption and loss of rent insurance proceeds. These proceeds are to be deposited in the individual Debtors' DIP accounts and treated in the same fashion under this Agreed Order as proceeds from the rental income they replace.

G.  Debtors are authorized to use cash collateral for the payment of professional fees submitted to and approved by this Court for up to a maximum amount of $60,000.00, upon notice to Respondent and opportunity to be heard on any such fee application to the Court. For expenditure of amounts greater than $60,000.00, approval by the Court or Respondent is required. Nothing in this section is intended to supplant the Court's review and approval of submitted fee applications for professionals. Provided however, the Debtors and their respective professionals shall not be entitled to payment of any fees or expenses

from cash collateral for commencing or prosecuting any claim or action for the purpose of seeking or obtaining any order, judgment, determination, declaration or similar relief (a) invalidating, setting aside, avoiding or subordinating, in whole or in part the liens and security interests of Respondent in the Pre-petition or Post-petition Collateral; and (b) preventing, hindering or otherwise delaying, whether directly or indirectly, Respondent's exercise of any of its rights and remedies under this Order, unless the Court first determines that pursuit of such claim or action is in the best interest of the creditors and the estate. Furthermore, during the pendency of this Order, this Order does not authorize expenditure of any amounts to pursue claims under Chapter 5 of the Bankruptcy Code unless (i) the Court determines that pursuit of such claims is reasonably likely in the applicable Debtors' business judgment to be cost effective, or (ii) the Respondent consents in writing to such use of cash collateral.

H. Debtors are authorized to use cash collateral for the timely refund of tenant's security deposits consistent with lease terms and applicable statutes, without approval of Respondent, from the DIP accounts set up pursuant to A(5), above.

I. Respondent is hereby granted a first priority security interest in and lien on Debtors' Pre-petition and Post-petition Collateral as described in Agreement including any and all of the Debtors' DIP accounts.

J. The pre-petition liens and security interests provided for thereunder are valid, binding, and enforceable, as to Debtors' Pre-petition Collateral, and

      the security interests provided for therein have been duly granted, properly attached, and duly perfected as provided for under the Agreement.

K.   This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens granted herein, effective as of the date and time of entry of this Order without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, record in, or possession of the collateral or other act to validate or perfect such security interest or lien.

L.   The entry of this Order and the execution, delivery and performance under any other documents executed in connection herewith do not constitute a compromise, waiver or other relinquishment of any right of Respondent at law, in equity, or otherwise, including but not limited to any right of Respondent to request and to obtain relief under the Bankruptcy Code.

M.   Except as otherwise provided for herein and under the Bankruptcy Code, the Respondent does not waive any of its rights under the Agreement, the Assignment of Rents, the note in favor of Respondent, as subsequently assigned, dated as of January 25, 2007 in the original principal amount of $11,000,000.00, and all other documents described in the Agreement (collectively, the "Loan Documents").

N.   In addition to all of the security interests and priorities granted to Respondent in the pre-petition documents and authorized by this Order, and as for adequate protection pursuant to 11 U.S.C. Sections 361, 363

and 364, Respondent hereby is granted security interests and replacement liens, dollar for dollar, in all of the collateral provided for under Agreement, including any and all of the Debtors' DIP accounts, and including cash collateral utilized by Debtors during the pendency of this bankruptcy proceeding, without prejudice to the right of Respondent to assert that the protection hereby granted is or may become inadequate. If the replacement liens do not prove to adequately protect Respondent's Pre-petition Collateral, Respondent is entitled to a Section 507(b) administrative priority claim.

O.  Debtors will employ, upon submission of a retention application and approval by the Court pursuant to Section 327 of the Bankruptcy Code, a certified public account ("CPA") who is not deemed an "insider" under the Bankruptcy Code to perform regular services to Debtors within 30 days of the signing of this order. CPA will continue to review Debtors' books on a monthly basis, generating a monthly report. This report will be made available to Respondent through their counsel of record. Nothing herein waives Respondent's right to object to the retention application of CPA on any ground.

P.  The Debtors shall make monthly payments to Respondent's tax and insurance escrow account(s) for any and all post-petition taxes, assessments and governmental charges as required under the Agreement, beginning December, 2008. Respondent will provide a current amount in the escrow accounts to reflect amounts credited and a

new escrow analysis will be performed to determine the necessary monthly payments in order ensure adequate amounts are available in the escrow accounts 30 days prior to the payment of amounts from the escrow account.

Q. Debtors are authorized to pay, upon submission of actual receipts and/or invoices by Debtors to Respondent, the following pre-petition debts from funds on hand or as they are received for services deemed to be critical to the ongoing business:

   (1) Utilities [$46,000]

   (2) Landscaping services [$6,000]

   (3) Employee wages [$1,000]

   (4) Tenant Security Deposit Refunds [$2,400]

R. Each of the following shall constitute an Event of Default under this Order (each, a "Termination Date"):

   i. Dismissal of any of the Debtors' Chapter 11 cases or the conversion of any such case to one under Chapter 7 of the Bankruptcy Code;

   ii. Debtors' use of cash collateral exceeding the expenditures, and variances as applicable, as set forth in the Budget or authorized by this Order without the consent of Respondent;

   iii. Debtors failure to comply with the reporting requirements contained herein and as described in detail in the Cash Management and Reporting Procedures attached hereto as

     Exhibit B;

  iv. Debtors' failure to comply with any other of the terms, conditions or covenants contained in this Order;

  v. The effective date of any confirmed plan of reorganization in the Chapter 11 cases;

  vi. Entry by this Court of an order granting Respondent, or any party-in-interest, relief from the automatic stay with respect to the Debtors' real property;

  vii. This Order is stayed, reversed, vacated, amended or otherwise modified in any respect without prior written consent of Respondent (which consent may be withheld in Respondent's sole discretion);

  viii. Upon 110 days of entry of the Orders for Relief (October 6, 2008).

S. In addition to any other remedies set forth in this Order, upon the expiration of three (3) business days after receipt of written notice from Respondent that an event of default has occurred, the Debtors shall immediately cease use of cash collateral, and shall segregate and hold all cash collateral in the Debtors DIP accounts, or that it may otherwise have in its possession, in trust for Respondent, provided Debtors have not requested a hearing by the Court for the determination of whether an actual default has occurred.  If Debtors request a hearing on determination of default, the request shall be on an expedited basis.

Written notice of a condition of default shall be provided by Respondent via email and/or facsimile to Debtors' counsel and the U.S. Trustee (the "Default Notice").

T.  This order regarding use of cash collateral is effective as of the date of signing below. Any objection to this Interim Order shall be in writing and shall be served upon the attorneys for the Debtors and Respondent.

SIGNED THIS 10 DAY OF Nov., 2008.

_____
UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM AND CONTENT:

Date: November 8, 2008
/s/ Michael Louis Catrett
Marjorie Payne Britt
SBN 15659700
ADM 3668
Michael Louis Catrett
ADM 589119
SBN 24049057
Britt & Catrett, P.C.
4615 SW Fwy Suite 500
Houston, TX 77027
(713) 666-0807
(713) 355-8382 (Fax)
**ATTORNEYS FOR DEBTORS**

Date: November 8, 2008
/s/ Briana L. Cioni
Briana L. Cioni
SBN 24044161
ADM 918963
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan St. Suite 2200
Dallas, TX 75201-2689
(214) 969-4900
(214) 969-4999 (Fax)
**ATTORNEYS FOR RESPONDENT**