IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| Green 126 LP, *et al.*, | § | Case No. 08-36470 |
| | § | |
| Debtors | § | **(Jointly Administered)** |
| | § | |
| | § | Hearing: February 11, 2009 |
| | § | 10:00am |

### DECLARATION OF WALLACE O. SELLERS IN SUPPORT OF MOTION FOR RELIEF FROM STAY

I, Wallace O. Sellers, declare:

1. I am an adult person over twenty-one (21) years of age.

2. The matters stated herein are true and correct and are within my personal knowledge and, if called to testify as a witness, I could and would testify competently thereto.

3. This declaration is made in support of LMREC CDO II REO I, Inc.'s ("LMREC") Motion for Relief from Stay.

4. I am executive director of Legg Mason Real Estate Investors and a director with LMREC, a secured creditor and party-in-interest in the above referenced jointly administered Chapter 11 cases (the "Bankruptcy Cases"). I am authorized to make this Declaration on behalf of LMREC.

5. I am the representative of LMREC that is primarily responsible for the loan relationship between Legg Mason Real Estate Investors, Legg Mason Real Estate Capital II, Inc., Legg Mason Real Estate CDO II, Corp. and LMREC (individually and collectively, "Legg Mason") and Greens 126 LP, Oaks 198 LP and Trails 240 LP (the "Debtors").

6. As a commercial lender, Legg Mason maintains records of its various loan transactions, including its loan relationship with the Debtors.

7. Legg Mason's business records are made by a person with knowledge of the relevant facts contained in such records, or made from information transmitted by a person with knowledge of the relevant facts contained in such records. Legg Mason's business records are made at or near the time of the acts, events, or transactions that are the subject of such records, as part of Legg Mason's regularly conducted business activity.

8. I am a custodian of Legg Mason's business records relating to is loans to the Debtors.

9. The documents relating to Legg Mason's loans to the Debtors referred to herein and attached as exhibits hereto are true and correct copies of business records kept and maintained by Legg Mason in the ordinary course of its business, as described above.

10. I have personal knowledge of the matters stated herein; or I have obtained knowledge of facts, events and transactions stated herein by reviewing Legg Mason's business records relating to such facts, events, and transactions.

*A.    Debtors and Legg Mason enter into the Note and Deed of Trust*

11. Legg Mason Real Estate Capital II, Inc. ("LMREI") and Debtors entered into that certain mortgage loan (the "Loan"), evidenced by that certain Promissory Note (the "Note") in the principal amount of $11,000,000, executed by the Debtors in favor of LMREI, dated as of January 25, 2007. A copy of the Note is attached hereto as **Exhibit 1**.

12. The Note is secured by, among other things, certain real property of the Debtors and rents, as evidenced in the Deed of Trust, Security Agreement and Financing Statement, dated as of January 25, 2007, attached hereto as **Exhibit 2**, (the "Deed of Trust"), and the Assignment of Lease and Rents, attached hereto as **Exhibit 3**, (the "Assignment of Rents"), dated as of

January 25, 2007 (the Deed of Trust, the Assignment of Rents, the Note and other documents evidenced by the Loan will be collectively referred to as the "Loan Documents"). Both the Deed of Trust and the Assignment of Rents were recorded against certain real property located at 5454 West Gulf Bank, Houston, Texas, 77088, 5350 West Gulf Bank, Houston, TX 77088 and 5300 Gulf Bank, Houston, Texas 77088 (collectively, the "Property") on February 6, 2007, with the County Clerk of Harris County, Texas, respective Document Nos. 20070075436 and 20070075437.

13.     Section 1.14 of the Deed of Trust sets forth Legg Mason's (as hereinafter defined) security interest in the rents and profits (collectively, the "Rents") from the Property. Legg Mason's security interest in the Rents are also evidenced by the Assignment of Rents and the UCC Financing Statements, filed with the Texas Secretary of State on January 31, 2007, file Nos. 07-0003557986, 07-0003557764 and 07-0003557875, and as amended by file Nos. 07-00058876, 07-00058872 and 07-00058874 filed on February 21, 2007 (the "UCC Financing Statements"). The UCC Financing Statements are attached hereto as **Exhibit 4**.

14.     The Loan Documents were assigned by LMREI to Legg Mason Real Estate CDO II, Corp. ("LM CDO") pursuant to the Assignment and Assumption of Deed of Trust, Security Agreement and Financing Statement and other Loan Documents, dated January 30, 2007, and recorded on February 15, 2007, with the County Clerk of Harris County, Texas, Document No. 20070099052. The LM CDO Assignment is attached hereto as **Exhibit 5**.

15.     The Loan Documents were then assigned by LM CDO to LMREC pursuant to the Assignment and Assumption of Loan Documents, dated October 3, 2008, which was recorded on October 7, 2008, with the County Clerk of Harris County, Texas, Document Nos. 20080506359 (LMREI, LM CDO and LMREC hereafter referred to individually or collectively as "Legg Mason"). The LMREC Assignment is attached hereto as **Exhibit 6**.

*B.  Debtors defaulted on the loan obligations*

16. On or about May 20, 2008, Legg Mason sent a default notice to the Debtors advising Debtors that they were in default of their loan obligations under the Note, and accelerating all amounts due and owing under the Note. A copy of the May 20, 2008 default notice is attached hereto as **Exhibit 7**.

17. Debtors and Legg Mason subsequently came to an agreement in connection with the May 20, 2008 default.

18. Debtors again defaulted on their loan obligations and as a result Legg Mason, on or about July 14, 2008, sent a default notice to the Debtors advising Debtors that they were in default of their loan obligations under the Note, and accelerating all amounts due and owing under the Note. A copy of the July 14, 2008 default notice is attached hereto as **Exhibit 8**.

19. Debtors and Legg Mason came to an agreement in connection with the July 14, 2008 default.

20. Debtors once again defaulted on their loan obligations and Legg Mason sent a default notice to Debtors on or about September 10, 2008, advising Debtors that they were in default of their loan obligations under the Note, and accelerating all amounts due and owing under the Note. A copy of the September 10, 2008 default notice is attached hereto as **Exhibit 9**.

*C.  Debtors initiated foreclosure proceedings*

21. Debtors failed to cure the September 10, 2008 default. Accordingly, Legg Mason proceeded to non-judicially foreclose its Deed of Trust on the Property.

22. On or about September 16, 2008, Legg Mason instructed its Trustee under the Deed of Trust, as substituted, to file with the Official Record of Harris County, Texas and to post in the Harris County, Texas Family Law Center a Notice of Substitute Trustee's Sale (the "Notice of Sale"), which provided that the foreclosure sale would be held on October 7, 2008,

between 10:00 a.m. and 1:00 p.m. The Notice of Sale was mailed, via certified mail, to the Debtors and parties with interests in the Property on September 12, 2008.

### D. *Total loan obligations as of the Petition date*

23. On October 7, 2008 (the "Petition Date"), within a half hour of the scheduled foreclosure, Debtors filed their separate Voluntary Petitions seeking protection from creditors pursuant to Chapter 11 of Title 11, United States Code ("Bankruptcy Code" or "Code").

24. Prior to the Petition date, Debtors were two mortgage payments behind. As of the Petition Date, the total loan obligation Debtors owed Legg Mason was in the aggregate amount of $11,404,065.88, which is due and payable under the Note and other Loan Documents. Such amount consists of the sum of (a) principal in the amount of $11,000,000, (b) accrued and unpaid interest in the amount of $208,847.22, (c) accrued Exit Fee of $94,285.71, (d) unpaid late charges in the amount of $46,631.91, and (e) legal fees of $54,301.04. However, Legg Mason recognizes that it is currently holding various amounts in escrows/reserves for the Debtors' benefit as follows: (a) TILC Reserve in the amount of $108,269.31, (b) Replacement Reserve Application in that amount of $10,403.84, (c) Interest Reserve Application in the amount of $238.83 and Tax Escrow Balance in the amount of $143,876.68. Additionally, Legg Mason expects to collect on behalf of the Debtors additional insurance proceeds in that amount of $1,269,298.00 in connection with property damage sustained from Hurricane Ike. If such amounts are offset against the total loan obligations owed, the total loan obligation owed to Debtors as of the Petition Date is reduced to $9,871,979.22. As of the date of the filing of this Motion, Debtors have made one mortgage payment but remain three mortgage payments behind—two pre-petition mortgage payments and one (but soon to be two) post-petition mortgage payment.

- 6 -

25. Attached hereto as <u>Exhibit 10</u> is a true and correct payment history as of the Petition Date, prepared by Legg Mason, evidencing when monthly loan obligations were due by Debtors under the Note and when the payments were actually made by Debtors. Such report indicates that the Debtors have thus far made a total 18 payments to Legg Mason, and only five of those payments were made within the eight-day grace period following the payment due date; all others were late.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6, 2009, in Los Angeles, California.

*/s/ Wallace O. Sellers*_____
Wallace O. Sellers
