**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| Greens 126, L.P. and | § | No. 08-36470 |
| Oaks 198, L.P. and | § | No. 08-36471 |
| Trails 240, L.P. | § | No. 08-36472 |
| | § | |
| **DEBTOR(S)** | § | Chapter 11 |
| | § | |
| Administratively Consolidated Under | § | Case No. 08-36470 |
| Greens 126, LP | | |

## GREENS 126, LP  PLAN OF REORGANIZATION

DATED: July 28, 2009

      Greens 126, LP   Debtor herein (the "Debtor"), proposes the following Plan Of Reorganization dated   July 28, 2009   (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sections 1101 et seq.:

### ARTICLE I

### DEFINITIONS

1. GENERAL. Unless the context otherwise requires, the following terms used in the Plan shall have the following meanings:

      1.1     ALLOWED or ALLOWED AMOUNT means the amount of any Allowed Claim.

      1.2     ALLOWED CLAIM means a Claim against the Debtors that (I) is allowed by a Final Order or (ii) is scheduled as liquidated, undisputed and non-contingent by the Debtor in its schedules filed with the Bankruptcy Court as they may be amended or supplemented, (collectively the "Schedules") or (iii) is timely filed with the Clerk of the Bankruptcy Court and no objection has been made to the allowance thereof.

      1.3     ALLOWED ADMINISTRATIVE EXPENSE or ADMINISTRATIVE CLAIM means an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to Sections 503 and 507(a)(1) of the Bankruptcy Code.

      1.4     ALLOWED PRIORITY TAX CLAIM means an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority under Section 507(a)(7) of the Bankruptcy Code.

      1.5     ALLOWED SECURED CLAIM means an Allowed Claim for which a Claimant asserts and is determined by agreement or Final Order to hold a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination or disallowance under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant

asserts a setoff under Section 553 of the Bankruptcy Code, but in any event, only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code (or by agreement between the Debtors and Claimant) of the Claimant's interest in the Debtors' interest in the property or to the extent of the amount subject to such setoff as the case may be.

1.6    ALLOWED UNSECURED CLAIM means an Allowed Claim for which a Claimant asserts and is determined by Final Order not to hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtors or right to setoff to secured the payment of such Claim.

1.7    ALLOWED WAGE CLAIM means Allowed Claim for which a Claimant asserts and is determined to be entitled to priority under Section 507(a)(3) of the Bankruptcy Code.

1.8    BANKRUPTCY CODE means the United States Bankruptcy Code, 11 U.S.C. Section 101 et seq. and all amendments thereto.

1.9    BANKRUPTCY COURT means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

1.10    BAR DATE means February 11, 2009, the date set by the Bankruptcy Court as the last day for filing Proofs of Claims.

1.11    CASE means this case for reorganization of the Debtors pending in the Bankruptcy Court.

1.12    CLAIM shall have the meaning set forth in Sections 101(4) of the Bankruptcy Code.

1.13    CLAIMANT means the holder of a Claim.

1.14    CONFIRMATION or CONFIRMATION OF THE PLAN means the entry by the Bankruptcy Court of the Confirmation Order.

1.15    CONFIRMATION DATE means the date on which the Confirmation Order with respect to the Plan becomes a Final Order.

1.16    CONFIRMATION HEARING means the hearing which will be held before the Bankruptcy Court in which the Debtor will seek Confirmation of the Plan.

1.17    CONFIRMATION ORDER means the order of the Bankruptcy Court confirming the Plan.

1.18    APARTMENT PROPERTIES shall mean all real estate owned by the Debtors that is located in Harris County, Texas, whether or not such property presently produces income.

1.19    CREDITOR shall have the same meaning as set forth in Section 101(9) of the Bankruptcy Code.

1.20    DEBTOR and/or DEBTOR-IN-POSSESSION means Greens 126 LP, jointly administered under Case No. 08-36470 with Oaks 198 LP and Trails 240 LP, .

1.21    DISBURSING AGENT means Michael P. Jayson, CPA.

1.22    DISCLOSURE STATEMENT means the Debtors' Disclosure Statement,  including

all exhibits attached thereto, prepared pursuant to Sections 1125(a) and/or 1126(b) of the Bankruptcy Code and, if applicable, Bankruptcy Rule 3018(b) for the Solicitation of Ballots, and all supplements and amendments thereto.

1.23    ESTATE means the estate created by Section 541 of the Bankruptcy Code upon the commencement of this case under chapter 11 of the Bankruptcy code with respect to the Debtors.

1.24    FILED means filed with the Clerk of the Bankruptcy Court.

1.25    FINAL ORDER means an order or final judgment of the Bankruptcy Court that has not been reversed, modified, amended or styled, and the time for appeal or to seek review or certiorari or rehearing thereof, has expired and as to which no appeal, review or rehearing is pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.26    HARRIS COUNTY PROPERTIES shall mean all of the Debtors' real estate, that is located in Harris County, Texas, whether or not such property presently produces income.

1.27    JUDGMENT LIEN CREDITORS shall mean those creditors, if any, holding allowed secured claims whose lien arose from an abstract of judgment properly recorded and enforceable against the Harris County Properties.  Judgment lien claims shall bear interest  at the appropriate judgment rate beginning of the effective date of the Plan. Debtors do not believe such creditors exist.

1.28    NET PROCEEDS shall mean the proceeds of the sale of an asset, after payment of all costs of sale, taxes due, contractual liens, and provision for any tax liability arising from the sale of the asset.

1.29    NET PROFITS means for any calendar quarter the net of gross operating revenues received by the Reorganized Debtors during such calendar quarter less (a) all expenses, salaries, charges and taxes attributable to that calendar year, pro rated to apply to such calendar quarter, and less (b) payments to Classes 1  made under the terms of this Plan during that calendar period.  Net profits shall not include insurance proceeds for property damage or loss of business income.

1.30    PETITION DATE means 10/7/2008, the date on which the Debtors filed their Petitions for relief under Chapter 11 of the Bankruptcy Code.

1.31    PLAN means this Plan of Reorganization of the Debtors under Chapter 11 of the Bankruptcy Code, as it may be amended, modified and/or supplemented from time to time.

1.32    PRO RATA means the same proportion an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class.

1.33    REORGANIZED DEBTOR means Greens 126, LP from and after the Confirmation Date.

1.34    OTHER TERMS. Any term that is used in this Plan and not defined in this Plan, but that is defined in the Bankruptcy Code, shall have the meaning set forth in the Bankruptcy Code. The words "herein". "hereto", "hereunder", and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

**ARTICLE II**

CLASSIFICATION OF CLAIMS

2.      All Claims and Interests against the Debtors of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Debtors or rejection of executory contracts and/or unexpired leases, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan. The Claims are hereby classified as follows:

2.1 CLASS 1 - Allowed Administrative Claims or Expenses.

Class 1.1 - The Allowed Administrative Claim of Britt & Catrett, P.C.

Class 1.2 - The Allowed Administrative Claim of Michael Jayson, CPA

2.2 CLASS 2 - Allowed Priority Wage Claims

Class 2 Creditors are set out in Exhibit "A" to this Plan.  This Class is impaired.

2.3 CLASS 3 - The Allowed Secured Claim of Taxing Authorities

Class 3.1 - The Allowed Secured Claims of Taxing Authorities with Liens on the Harris County Properties for pre-petition taxes have been paid in full.  This Class is not impaired.

2.4 CLASS 4 - ALLOWED SECURED CLAIM OF LEGG MASON  This class is impaired.

2.5  CLASS 5 - Administrative Convenience Claims.  Allowed claims of $200.00 or less, or those Class 6 claimants who elect to reduce their claims to $200.00 and be treated as a class 5 claimant.  This Class is impaired.

Class 5 creditors are set out in Exhibit "A" to this Plan.

2.6  CLASS 6 - Allowed Unsecured Claims. Class 6 Claims shall receive on a quarterly basis  after payment in full of Class 2 Priority Wage Claims a quarterly amount sufficient to pay these claims in full within five years after the effective date of the Plan.  This Class is impaired.

Class 6 creditors are set out in Exhibit "A" to this Plan.

2.7 CLASS 7 - Debtor's Equity Owners      Debtor's Equity Owners shall retain their equity ownership in the reorganized Debtors in full satisfaction of their claims.

Debtor's Equity Owners are Java Investments, Inc. and Ms. Tammi Le

**ARTICLE III**

PROVISIONS FOR THE SATISFACTION OF CLAIMS

3. The Allowed Claims classified in Article II hereof shall be satisfied in the manner set forth in

this Article III.

3.1  <u>CLASS 1 - Allowed Administrative Claims or Expenses</u>. Class 1 Claims and Expenses, to the extent not paid during the Chapter 11 case, shall be paid in full in cash on the Effective Date   The Debtors estimate that Administrative Expenses are no more than $72,000.00 through  July 28, 2009.  These estimated claims may be broken down as follows:

Class 1.1

Attorney's fees and costs:                   $ 50,000.00

Class 1.2

Accountant's fees and costs               $ 22,000.00

These expenses shall be paid from the post-petition income of the estate or from the post-confirmation income of the Debtors no later than the date of the entry of the Confirmation Order.

3.2  <u>CLASS 2 - Allowed Priority Wage Claims</u>.  Class 2 Claims shall be satisfied by the payment by the Reorganized Debtor of deferred cash payments over a period not to exceed 6 months from the effective date of the Plan.  Such payments shall commence at the end of the first calendar quarter following the effective date of the Plan and shall continue until Class 2 Claims have been paid in full or 6 months have passed, when any remaining balance due shall be paid.

3.3 <u>CLASS 3 - The Allowed Secured Claims of Taxing Authorities</u>

CLASS 3.1  The Allowed Secured Claims of Property Taxing Authorities on the Harris County Properties were for 2008 property taxes.  These claims have been paid in full.

3.4 <u>CLASS 4 - ALLOWED SECURED CLAIMS</u>

CLASS 4.1 - The Allowed Secured Claim of Legg Mason. The allowed secured claim of Legg Mason shall be assumed by the Reorganized Debtors and, beginning with the first monthly installment due after the effective date of the Plan, shall be paid in accordance with its' contractual terms.  Arrearages due to Legg Mason shall be paid from the following:

a.  **Proceeds from insurance claims filed for property damage** to the Harris County Properties less any amount needed to complete repairs on the Properties.

b.   **Proceeds from insurance claims filed for loss of business income** from the Harris County Properties due to Hurricane Ike.

c.  Proceeds from the refinancing of the debt on the Properties.

d.  Any remaining balance shall be paid upon the maturity of the original contract.

3.5   <u>CLASS 5 - Administrative Convenience Claims.</u>   The Allowed Administrative Creditors, holding claims of $200.00 or less, shall be paid the value of their claim not to exceed $200.00 within 30 days of the effective date of the Plan.

3.6  <u>CLASS 6 - Allowed Unsecured Claims</u>. Class 6 Claims shall receive on a quarterly

basis  after payment in full of Class 2 Priority Wage Claims a quarterly amount sufficient to pay these claims in full within five years after the effective date of the Plan.

3.7    CLASS 7 - Debtors    Java Investments, Inc. and Tammi Lee, the owners of any equity of all property of this estate.   Java Investments, Inc. and Tammi Lee shall retain their ownership of the reorganized Debtor  and shall retain their ownership interest in the property subject to the terms of this Plan.

## ARTICLE IV

### MEANS OF EXECUTION AND IMPLEMENTATION OF THIS PLAN

4.This Plan will be implemented in accordance with the following:

4.1    General Provisions.  The Debtor will retain their  property, restructure their debts and continue to operate the Harris County Property as rental property to generate the income necessary to fund the payments under this Plan and to pursue the collection of insurance claims due to the Debtor.

4.2    Vesting of Assets. On Confirmation Date, title to all assets and properties whatsoever of the Debtors shall revest in the Reorganized Debtors free and clear of all Claims and Interests except as provided for in this Plan, and the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor except to the extent of any treatment received under this Plan.

4.3    Distribution of Consideration.

4.3.1    Dates of Distribution.  Distributions shall be made on the Effective Date or as otherwise provided in the Plan or by order.

4.3.2.    Disbursing Agent      The Disbursing Agent shall be the Debtor's accountant, Mr. Michael P. Jayson, CPA.

4.3.3.    Disputed Claims.

4.3.3.1.    Escrow.  Notwithstanding any provisions of this Plan to the contrary, the Debtor shall withhold from the property to be distributed under this Plan, and shall place in escrow, for all Claims that are disputed or contingent according to the Debtor's Schedules and Statement of Affairs, distributions as allowed under this Plan until an objection to Claim is filed within the time limits provided in this Plan and a Final Order is entered or a settlement is reached allowing or disallowing the Claim. As to any unliquidated Claim, the Bankruptcy Court shall determine what amount is sufficient to withhold. To the extent practicable, the Disbursing Agent may invest any cash in the escrow in deposits covered by insurance of the Federal Deposit Insurance Corporation or in obligations of the United States Government or its agencies.

4.3.3.2.    Distribution. The property in escrow, including the allocable portion of the net return yielded from the investment in escrow, shall be distributed to the extent Claims are allowed by Final Order. Any

property or cash in the escrow remaining after disputes over Claims of a particular Class herein and any cash previously reserved in escrow for disputed Claims of a kind specified in Section 507(a) of the Bankruptcy Code that are disallowed and the allocable portion of the net return yielded from investment of the cash, if any, in the escrow likewise will be distributed in accordance with this Plan.

4.3.4. The Debtors in their sole discretion shall be authorized to file and prosecute objections to the allowance of any Claims if the Debtors deem such objections to be warranted. Such objections shall be filed on or before 90 days after the Effective Date, except in the event of an appeal of the Confirmation Order or motion to reconsider or modify the Confirmation Order, in which event, such objections shall be filed within 90 days after final disposition of the appeal or motion to reconsider or modify the confirmation Order. Upon application filed prior to the Effective Date and upon cause shown, the Court may extend such period for filing objections with respect to any particular creditor or creditors for a reasonable time under the circumstances with respect to such Claims.  If no objection to the allowance of the Claim is filed within the time so limited, such Claims shall be deemed allowed in the amount which is proved, and the holder of such Claim shall be entitled to obtain a distribution order thereon.

4.4  <u>Disbursing Agent's Duties.</u>  The Disbursing Agent shall, on account of claims of such creditors, deposit net profits received from the Debtor in a non-interest bearing account in a banking institution approved for deposit of funds held in the Registry of the United States District Court for the Southern District of Texas or as approved by the Office of the United States Trustee for said District.  Thereafter, the Disbursing Agent shall disburse to creditors of the Debtor in accordance with this Plan, and with the order confirming the Plan, all distributions in partial or complete satisfaction of each creditors' claims.

4.4.1 <u>Designation of Disbursing Agent</u>  The Disbursing Agent shall be the Debtor's accountant, Mr. Michael P. Jayson, CPA.   In the event the designated Disbursing Agent should not accept the duties of Disbursing Agent or should fail or refuse for any reason to act as Disbursing Agent, then the Debtors shall appoint a successor Disbursing Agent.

4.4.2 <u>Costs of the Disbursing Agent</u>.  All costs, expenses and obligations incurred by the Disbursing Agent in discharging the duties hereinabove described or in any manner connected, incidental or related thereto, shall be a charge only against the funds which may be subject to his control.  The Disbursing Agent shall have authority to employ one or more attorneys, accountants, or other professionals, as he deems necessary to assist him in the performance of the duties described in paragraph 4.4 hereof and the cost to the Disbursing Agent for the services of such attorneys, accountants or other professionals shall only be recoverable hereunder from the Debtor directly and not from the funds deposited for creditors.

4.4.3  <u>Compensation of the Disbursing Agent.</u>  The Disbursing Agent shall receive an initial set-up fee of $500.00 from the Debtor as compensation for setting up the payment procedures and $300.00 per month thereafter for performing his duties set forth above.

## ARTICLE V

## <u>UNEXPIRED LEASES</u>

5.    The Confirmation Order shall act as this Court's Order authorizing  the Debtor to reject any contract not expressly assumed by the Debtor by prior motion and hearing. Claims for

damages, if any, arising from such rejection shall be filed with the Clerk of the Bankruptcy court within 20 days of the Effective Date.  Any Allowed Claim from or as a result of the rejection of any and all executory contracts and on unexpired leases shall be classified as Class 6 Claim, but nothing contained herein shall constitute a determination that any rejection shall give rise to or result in an Allowed Claim.

## ARTICLE VI

### CAUSES OF ACTION

6.      The Debtor shall prosecute any causes of action owned by it, as it shall deem advisable and appropriate with any recoverable proceeds to be distributed to creditors in accordance with the terms of this Plan.

## ARTICLE VII

### LEGALLY BINDING EFFECT, DISCHARGE OF CLAIMS AND INTERESTS

7.1     All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever against the Debtors, the Reorganized Debtors,  the Plan Agent, any of the Debtors or Reorganized Debtors agents and employees or any of their respective assets or properties; and, except as otherwise provided herein, upon the Confirmation Date, all Claims against the Debtors shall be discharged and released in full.  All holders of Claims or Interests shall be precluded from asserting against the Debtors, the Reorganized Debtors, the Plan Agent, or any of their agents or employees or their respective assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature relating to the Debtors that occurred prior to the Confirmation Date, other than Claims directly arising under this Plan.

7.2     The Provisions of this Plan shall bind all creditors, whether or not they accept this Plan. The distributions provided for creditors shall not be subject to any Claim by another creditor by reason of a contractual right of subordination.

## ARTICLE VIII

### RETENTION OF JURISDICTION

8.      Until this Reorganization Case is closed, the Bankruptcy Court shall retain such jurisdiction as is permissible, including that necessary to insure that the purpose and intent of this Plan are carried out and to hear and determine all Claims set forth in Article II or otherwise that could have been brought before the entry of the Confirmation Order.

8.1.    The Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all causes of action which may exist on behalf of the Debtors. Nothing contained herein shall prevent the Reorganized Debtors from taking such action as may be necessary in the enforcement of any cause of action which may exist on behalf of the Reorganized Debtors and which may not have been enforced or prosecuted by the Debtors-in-Possession.

8.2.    Through and following the Effective Date, the Bankruptcy court shall further retain jurisdiction for the purpose of classification of the Claim of any creditor and the re-examination of Claims which have been Allowed for purposes of voting, and determination of such objections as may be filed to creditors' Claims. The failure by the Debtors to object to, or

examine any Claim for the purpose of voting shall not be deemed a waiver of the Debtors or of the Reorganized Debtors right to object to, or re-examine, the Claim of any Claimant, in whole or in part, for any other purposes, all of such rights being herein expressly retained and preserved unto the Debtor and the Reorganized Debtors.

8.3.    The Bankruptcy Court shall further retain jurisdiction through and after the Confirmation Date for the purpose of determining all questions and disputes regarding ownership or title to the assets of the Estate, or the proceeds thereof, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Confirmation Date, between the Debtor and any other party, including, but not limited to any right of the Debtors to recover assets pursuant to the provisions of the Bankruptcy code and to adjudicate all Claims or controversies arising out of any purchase, sale or contract made or undertaken by the Debtor during the pendency of the Chapter 11 case.

8.4.    The Bankruptcy court shall further retain jurisdiction for the following purposes through and after the Confirmation Date:

8.4.1.    To modify this Plan after Confirmation pursuant to the Bankruptcy rules and Title 11 of the Bankruptcy Code;

8.4.2.    To assure the performance by the Reorganized Debtor of their obligations to make distributions under this Plan;

8.4.3.    To enter such orders, including injunction, as are necessary to enforce the title, rights, and powers of the Reorganized Debtor and to impose such limitations, restrictions, terms, and conditions on such title, rights and powers as the Bankruptcy court may deem necessary;

8.4.4.    To enter an order concluding and terminating this Reorganization Case;

8.4.5.    To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

8.4.6.    To decide issues concerning federal tax reporting which arise in connection with the Debtor prior to the Petition Date, during the pendency of this Chapter 11 case or with the confirmation of consummation of this Plan, and further to hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525, and 1146 of the Bankruptcy Code;

8.4.7.    To hear and determine any such action or proceeding brought by the Debtor pursuant to Sections 510, 542, 543, 544, 545, 547, 549, 550, 551, and 553 of the Bankruptcy Code;

8.4.8.    To direct distributions under the Plan, and adjudicate all controversies concerning classifications or allowance of any Claim or Interest;

8.4.9.    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases and to consummate the rejection and termination thereof; and further, to hear and determine all matters relating to the assumption of executory contracts and unexpired leases;

8.4.10. To liquidate damages or estimate Claims in connection with disputed, contingent or unliquidated Claims;

8.4.11. To hear and determine all actions and proceedings with disputed, contingent or unliquidated Claims;

8.4.12. To hear and determine all requests for compensation and/or reimbursement of expense that may be made after the Confirmation Date.

**ARTICLE IX**

<u>INSTRUMENTS</u>

9.      Any promissory note or other evidences of Claims issued by the Debtor under this Plan shall represent only the right to participate in the distributions provided by the Plan.

**ARTICLE X**

<u>MODIFICATION OF THE PLAN</u>

10.      The Debtors may propose amendments to or modifications of this Plan at any time prior to the Confirmation Date. After the Confirmation Date, the Debtors may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interest of Claimants or Interest holders are not materially and adversely affected.

**ARTICLE XI**

<u>MISCELLANEOUS PROVISIONS</u>

11.1.   <u>Notices</u>. All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile or mailed by registered and certified mail, return receipt requested:

11.1.1. If to Debtors to:

Michael Jayson, C.P.A.
5901 Dolores
Houston, TX 77057-5603

with a copy to:

Marjorie A. Payne Britt/Michael L. Catrett

Britt & Catrett, P.C.
4615 S. W. Fwy., Suite 500
Houston, TX 77027

11.1.2. If to a holder of an Allowed Claim, at the address set forth in its allowed proof of claim of, if none, at its address set forth in the schedule prepared and filed by the Debtor with the Court pursuant to Rule 1007(b).

11.1.3. Notice shall be deemed given when received.  Any person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to

the provision of this Section 11.1.3. to the person to be charged with the knowledge of such change.

11.2.   <u>Amendment of Claims After Confirmation</u>.  Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation except as agreed with by the Debtor.

11.3.   <u>Cram-down</u>.  In the event any impaired Class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

11.4.   <u>Revocation</u>.  The Debtors reserve the right to revoke and withdraw or modify this Plan at any time prior to the Confirmation Date.

11.5.   <u>Headings</u>.  Headings are utilized in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

11.6.   <u>Assignments of Claim</u>.  No post-petition or post-confirmation  assignment of a Claim shall be binding upon the Debtor for any purpose including, without limitation, voting and the receipt of distributions, unless confirmed by final Bankruptcy Court order and any purported assignee may look only to the assignor with respect to the enforcement of any rights derived thereby.

11.7.   <u>Due Authorization by Creditors</u>. Each and every creditor who elects to participate in the distributions provided for herein warrants that he is authorized to accept in consideration of this Claim against the Debtors the distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by him under this Plan.

11.8.   <u>Entire Agreement</u>.   This Plan, as described herein, and in the Disclosure Statement and Exhibits thereto, sets forth the entire agreement and understanding among the parties hereto relating to the subject matter thereof and supersedes all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereinafter be agreed to by the parties in writing.

## ARTICLE XII

### <u>CONDITIONS PRECEDENT OF CONFIRMATION</u>

12.   There are no conditions precedent which must occur prior to confirmation of the Plan, except as may be otherwise set forth herein.

## ARTICLE XIII

### <u>EFFECTIVE DATE</u>

13.   This Plan takes effect on the 30th day following the date after the Confirmation Order becomes a Final Order.

**ARTICLE XIV**

<u>DEFAULT</u>

14.1   <u>Post-Confirmation Default by Debtor.</u>   Upon the entry of a final order confirming this Plan, the creditors of the Debtor holding secured claims of any class shall be authorized to employ any applicable non-bankruptcy remedy against such property of the estate of the Debtor as secures the payment of such claims without further order of the Court, upon the Debtor's default in the payment of such claim as provided in this Plan or upon the Debtor's default in the performance of any non-monetary duty imposed on the Debtor under the terms of any mortgage, deed of trust, security agreement, promissory note or other instrument providing for such duties, provided as follows to the extent not otherwise dealt with as to specific creditor's treatment set forth in this Plan:

A.   The holder of such claim shall provide written notice of such default to the Debtor, the Debtor's counsel and the Disbursing Agent; and

B.   Advise the Debtor in the written notice provided for in the above and foregoing paragraph A of this paragraph 14.1 of the exact nature and monetary amount, if any, of the default and provide the Debtor thirty (30) days to cure such default and setting forth the consequences of the Debtor's failure to do so.

14.2. Any default with respect to the treatment of any class will not constitute a default in respect to any other class, and there shall be no cross-collateralization of any collateral between classes.

14.3 Any default with respect to the payment of any creditor within a class shall not operate as a default with respect to any other creditors within the class.

DATED this 28th day of July, 2009

Respectfully submitted,

   /s/Andrew Zel
Andrew Zel, Managing Agent
Greens 126 LP
Oaks 198 LP
Trails 240 LP

OF COUNSEL:

Marjorie Payne Britt/Michael L. Catrett

Britt & Catrett, P.C.
4615 S. W. Fwy., Suite 500
Houston, TX 77027
(713) 666-0807